**In re Charles J. SUCCA, Debtor.**

**Harvey D. CAUGHEY, Trustee Plaintiff,**

**v.**

**Charles J. SUCCA, Defendant.**

**Adv. No. 90–1305–FM.**

**Bankruptcy No. 1–86–00014–FM.**

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

March 8, 1991.

Patrick C. Hargadon, Martinec, Hargadon & Wise, P.C., Austin, Tex., for debtor/defendant.

Harvey D. Caughey, Austin, Tex., Chapter 7 Trustee/plaintiff.

MEMORANDUM OPINION ON MOTION OF CHARLES J. SUCCA, DEFENDANT, TO DISMISS COMPLAINT AS NOT TIMELY FILED

FRANK R. MONROE, Bankruptcy Judge.

A hearing was held on December 18, 1990 on the Motion of Charles J. Succa, Defendant to Dismiss the above styled and numbered Complaint filed by Harvey D. Caughey, Plaintiff as Not Timely Filed.

This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1334(b) and (d), 28 U.S.C. §§ 157(a) and (b)(1) and the standing Order of Reference existing in this District. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(1)(G). This Memorandum Opinion constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

## SETTING THE STAGE

On January 6, 1986, Charles J. Succa filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The case was converted to Chapter 7 on October 22, 1987, and Plaintiff was appointed trustee to administer the assets of the estate. Defendant received a discharge on March 28, 1988. The case was closed by order dated June 30, 1988.

The case was reopened by order filed on August 26, 1988 pursuant to the Trustee's request in order to administer assets of the estate previously not scheduled by the Debtor. Plaintiff was reappointed Trustee.

Plaintiff alleges that Defendant failed to schedule, and therefore, concealed his interest in a condemnation proceeding in California styled *City of Thousand Oaks v. Charles Succa*, Case No. 77192, filed July 1, 1982, [a lawsuit the Defendant continues to prosecute] and that he has received a partial award of at least $19,900.00 in said condemnation proceeding which he also failed to disclose or turn over to Plaintiff.

Defendant denies these allegations and alleges that the real property that is the subject of the condemnation proceeding was transferred by him prepetition to a third party, that he had no interest in the condemnation action when he filed bankruptcy, and that he has continued to prosecute the lawsuit only because he acquired an interest in the condemnation action by an agreement with the third party subsequent to his bankruptcy filing. Defendant

further alleges that Plaintiff's causes of action are barred by the statute of limitations set forth in 11 U.S.C. § 727(e)(2), i.e., the Complaint was filed more than one year after the later of the date the case was closed or the date he received his discharge.

Plaintiff asserts that the Complaint was timely filed in that the case has not been finally closed and the federal limitation period is tolled during the time of concealment of the asset.

## ISSUES

1) From what date does the statute of limitations period set forth in 11 U.S.C. § 727(e) run?; and

2) Is the § 727(e) statute of limitations period tolled for the period of time the Defendant fraudulently concealed assets of the estate?

## DISCUSSION AND CONCLUSIONS OF LAW

Section 727(e)(2) of the Bankruptcy Code provides:

"The trustee, a creditor, or the United States trustee may request a revocation of discharge—

(2) under subsection (d)(2) or (d)(3) of this section before the later of—

(A) one year after the granting of such discharge; and

(B) the date the case is closed."

11 U.S.C. § 727(e)(2).

Plaintiff's allegation is that, "the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee." 11 U.S.C. § 727(d)(2).

Bankruptcy Rule 7012(b) makes Rule 12(b) of the Federal Rules of Civil Procedure applicable to the Defendant's motion. *In re Edmonds*, 924 F.2d 176 (10th Cir. 1991); *see also* 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1360 (2d ed. 1990). Further, because Defendant's motion requests dismissal [for if limitations apply, Plaintiff has failed to state a claim upon which relief can be granted], the Court must assume all facts alleged in the Complaint to be true. *Id.; see also In re Garafano*, 99 B.R. 624, 627–28 (Bankr.E.D.Pa.1989). And, in considering a Rule 7012(b) motion, "dismissal is inappropriate unless plaintiff can prove no set of facts which would entitle him to relief." *Id.* (citing *In re Kelpe*, 98 B.R. 479, 480 (Bankr.W.D.Mo.1989)).

■ 1) *Effect of Reopening.* A case is not closed until the estate is fully administered and the trustee has been discharged. 11 U.S.C. § 350(a). Further, a case may be reopened in order "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The legislative history to this section does not speak directly to the effect of reopening a case on the limitations periods set forth in the Bankruptcy Code; thus, the Court turns to a review of case law researched.

No cases were found specifically dealing with the effect of reopening a case on the limitations period set forth in §§ 727(e)(1) or (2). However, reopening a case "put[s] the bankruptcy estate back into the process of administration. The original bankruptcy is revived including all the procedural and substantive rights of the debtor." *In re Cassell*, 41 B.R. 737, 740 (Bankr.E.D.Va. 1984) (citations omitted). If all rights of the debtor are reinstated, is it not only equitable [and logical] that all rights of creditors and/or the trustee are revived as well?

Further, courts have ruled that other limitations periods in the Bankruptcy Code tied to the closing of the case do not begin to run until the assets have been fully administered. *In re White*, 104 B.R. 951, 955 (S.D.Ind.1989). In this case, the debtor challenged the trustee's action to void a mortgage on the debtor's home as barred by the limitations period in § 546(a), a section requiring avoidance actions to be brought before the earlier of two years of the appointment of the trustee or the time the case is closed or dismissed. *Id.* The

debtor argued that the bankruptcy court abused its discretion in reopening the case to allow the trustee to bring the avoidance action because the trustee had been appointed almost three years before moving to reopen, and the estate had been closed at that time for three years. *Id.* The district court denied the debtor's challenge to the trustee's motion to reopen by stating that:

> "[I]t is clear that the closing of a case cannot trigger section 546(a)(2) unless the case has been *properly* closed, i.e., the assets fully administered. In the present case, previously undisclosed assets have been alleged. To permit an erroneous closing to bar reopening would allow the debtors to profit from their own misconduct."

*Id.* at 955 (emphasis in original).

Another court in a reopened case held that the limitations period set forth in § 546(a) when applied to actions brought under § 547 does not begin to run from the date the case is first closed. *In re Petty*, 93 B.R. 208 (9th Cir.BAP 1988). The court reasoned that because the debtor's interest in an asset was not disclosed in his petition, the trustee of the case could not have administered the asset. *Id.* at 212. Thus, "the case was never fully administered within the meaning of § 350(a), and therefore not properly closed under that section." *Id.* "Accordingly, the word 'closed' in § 546(a)(2) must be read to mean properly and finally closed." *Id.*

Applying the rationale expressed in *In re Cassell, In re Petty*, and *In re White*, the Court concludes that this Debtor's case was not properly closed on June 30, 1988, as not all assets, specifically those which are the subject of Plaintiff's Complaint, had been properly administered at that time. Therefore, the limitations period set forth in § 727(e)(2) has not yet begun to run, and the Plaintiff's Complaint is timely.

■ 2) *Tolling of Limitations.* The Court was unable to find any precedent that has dealt with the tolling of the limitations period in § 727(e)(2) because of a debtor's fraudulent concealment of assets from the estate. However, courts have considered the effect of a debtor's fraudulent concealment of assets when considering actions brought under other sections of the Bankruptcy Code and have applied the doctrine of equitable tolling to federal statutes of limitations when the conduct of the debtor has so warranted.

For example, one court has considered "the limitations period established by Bankruptcy Rule 4004 for discharge complaints ... [to] be tolled when a ground for an objection to discharge has been fraudulently concealed." *In re Mufti*, 61 B.R. 514, 519 (Bankr.C.D.Cal.1986). This court stated that, although appearing not to be allowed when Bankruptcy Rule 4004 and §§ 727(d)(1) and (e) are read together, a trustee could file a discharge complaint in the interim period between the last date to object to discharge but before the discharge was issued due to the debtor's concealment of the fraud. And, after discharge, the discovery of the debtor's fraudulent conduct would be determined by the parameters of § 727. *Id.* The *Mufti* court reasoned that "[f]raudulent concealment of a cause of action results in the equitable tolling of federal statutes of limitation in the absence of contrary congressional intent." *Id.*

Further, the *White* court applied the doctrine of equitable tolling to allow the trustee's avoidance action to proceed although filed more than two years after the appointment of the trustee; a result in conflict with the limitations period established by § 546(a)(1) but which was allowed due to the debtors' concealment of an undisclosed mortgage on their home and other personal property. *In re White*, 104 B.R. at 953 & 956. The court analyzed the history and development of this "federal equitable tolling doctrine" from its roots in a case decided by the United States Supreme Court in 1875. *Id.* at 956 (citing *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1875)). As support for its ruling that the application of the limitations period in § 546(a) should be tempered by the need to prevent fraud, the *White* court quoted the *Bailey* opinion which stated:

> "[T]o hold that by concealing a fraud, or by committing a fraud in a manner that

it concealed itself until such time as the party committing the fraud could plead the Statute of Limitations to protect it, is to make the law which was designed to prevent fraud, the means by which it is made successful and secure."

*Id.* at 956 (quoting *Bailey v. Glover,* 88 U.S. (21 Wall.) at 349–50).

The Supreme Court later applied the federal tolling doctrine to all federal law when it held that "the equitable tolling doctrine should be 'read into every federal statute of limitations.'" *Id.* (citing *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946)). The *White* court cited other judicial opinions which tolled a limitations period against " 'those who negligently facilitate fraud' as well as those who take affirmative steps to conceal fraud." *Id.* [quoting *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1296 (7th Cir.1975) (equitable tolling doctrine applied to plaintiff's claims, including those based on negligence, for violations of the Securities and Exchange Commission Act of 1934)]. Following from this, if a debtor negligently failed to schedule an asset, "the tolling would last until the fraud could reasonably have been discovered by a trustee exercising due care." *Id.* In contrast, if the debtors actively concealed the asset, "the statute of limitations would be tolled until actual discovery of the fraud." *Id.*

Other courts have applied the equitable tolling doctrine to toll the limitations period established by § 546(a). *Id.; see also In re McGoldrick,* 117 B.R. 554, 559 (Bankr.C.D. Cal.1990) ("In cases involving fraudulent conduct, the statute of limitations set forth in Section 546(a) may be tolled where the relevant facts have been concealed from the trustee and the trustee has made reasonable and diligent inquiry under the circumstances of the case."); *In re Candor Diamond Corp.,* 76 B.R. 342, 350–51 (Bankr.S.D.N.Y.1987) ("Under the modern formulation of the [equitable tolling] doctrine, the statute does not begin to run until the 'plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of

reasonable diligence after being apprised of sufficient facts to put him on notice. . . . [T]here can be no doubt that the defendants' active, deliberate and consistent concealment of the fraudulent transfers requires us to invoke the *Bailey* doctrine."); *In re Butcher,* 72 B.R. 247, 250 (Bankr.E. D.Tenn.1987) ("[T]he bar imposed by § 546(a) is not absolute; the limitations period is tolled where fraud is concealed."); and *In re Metzeler,* 66 B.R. 977, 981 (Bankr.S.D.N.Y.1986) ("We, therefore, hold that the rule of *Bailey v. Glover* applies to § 546(a) of the Code. To rule otherwise would immunize fraudulent transfers not discovered by a trustee who acted with . . . due diligence.").

As further support for the proposition that the limitations period should be tolled during a period of concealment, the Court considers on point the reasoning of the Fifth Circuit in *In re Olivier,* 819 F.2d 550 (5th Cir.1987). In this case, nearly seven years before filing bankruptcy, the debtor transferred title to his home to his mother but retained a beneficial interest in the property by continuing to live there rent free, by maintaining the home, and by paying for homeowners insurance coverage. In anticipation of litigation, the debtor made the transfer two days after the debtor's minor son was involved in a traffic accident which severely injured another person. The debtor's continued concealment of the title transfer to his mother and his retention of the beneficial interest in the property continued to the time of the bankruptcy filing. The court rejected the debtor's argument that the transfer fell outside of the one year period set forth in § 727(a)(2)(A), despite the fact that the paper transfer occurred seven years before, and affirmed the lower courts' decisions denying the debtor a discharge. The Fifth Circuit followed the continuing concealment doctrine to hold:

"[T]he concealment of an interest in an asset that continues, with the requisite intent, into the year before bankruptcy constitutes a form of concealment which occurs within the year before bankruptcy

and, therefore, that such concealment is within the reach of section 727(a)(2)(A)." *Id.* at 555.

This Court further considers as persuasive the policy behind § 554 concerning the abandonment of estate assets at the time of closing of a case. *See* 11 U.S.C. § 554. Under this section, scheduled assets not otherwise administered are deemed abandoned to the debtor. However, under § 554(d) unscheduled assets remain property of the estate and are not deemed abandoned to the debtor at the time of the closing of the case; thus, the debtor is prevented from profiting from his own fraud by having undisclosed assets deemed abandoned to him. *In re Petty,* 93 B.R. at 212 "Generally, there can be no abandonment, by mere operation of law, of property that was not listed in the debtors' schedules or otherwise disclosed to creditors." *Id.* This policy should be applicable to situations arising under other Code sections in which fraudulent conduct of a debtor may be present.

The Court is aware of cases in which some courts have not extended or tolled the one year limitations period set forth in another subsection of § 727(e). However, these cases dealt with the limitations period set forth in § 727(e)(1), a subsection tied to other grounds for revoking discharge than that presented here. The limitations period contained in § 727(e)(1) governs the timeliness of actions brought under § 727(d)(1), which provides for revocation if the "discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." *See, e.g., In re Bulbin,* 122 B.R. 161 (Bankr.D.C.1990); *In re Schneider,* 37 B.R. 115, 119 (Bankr.E. D.N.Y.1984); *In re Peli,* 31 B.R. 952, 955 (Bankr.E.D.N.Y.1983); and *In re Santos,* 24 B.R. 688, 690 (Bankr.D.R.I.1982). As such, these cases involve grounds to revoke a discharge different than those at issue here; therefore, the Court does not consider them controlling.

Further, the Court does not consider on point two cases relied on by Defendant for his position that Plaintiff's Complaint is time barred. In one of the cases, a creditor attempted to revoke the debtor's discharge under §§ 727(a)(2) and (4) because the debtor allegedly committed fraud by purposefully listing the creditor's address incorrectly and under § 523(a)(2) because the debtor allegedly omitted certain assets from his schedules. *In re Pankey,* 122 B.R. 710, 711 (Bankr.W.D.Tenn.1991). This case is inapplicable because the creditor did not plead § 727(d).

In the second case, a creditor filed a complaint objecting to discharge and to dischargeability of debt three days after the sixty day deadline set by Bankruptcy Rules 4004(a) and 4007(c) under an agreement to extend the bar date with the debtor's counsel but without the entry of a court order extending the same. *In re Santos,* 112 B.R. 1001 (9th Cir.BAP 1990). The debtors later filed a motion to dismiss the adversary and asserted limitations as an affirmative defense. *Id.* at 1003. The creditor asserted equitable estoppel, waiver, or equitable tolling precluded the debtor's motion to dismiss. *Id.* at 1003–1004. The court held that, although equitable doctrines could apply to the time limits set forth in the Rules 4004(a) and 4007(c), i.e., the deadlines are not jurisdictional time limits, equitable relief "must be consistent with the language and purposes of the Rules." *Id.* at 1009. Following from this, the court did not apply the doctrine of equitable tolling to the two rules at issue because "equitable tolling is concerned with the point in time at which a limitations period begins to run" and there was no question under the language of the rules when the period began. *Id.* at 1006. The court denied relief under this equitable doctrine because the creditor had other avenues available to prevent the time period from expiring, i.e., he could have filed a request to extend the bar date, or if fraud was later found, a complaint to revoke discharge. *Id.* at 1007. Again, this Court does not consider the *Santos* case applicable by analogy to the case at bar as it did not involve continuing concealment by the debtor of property of the estate.

Lastly, the Court realizes that the discharge granted debtors under § 727 provides them with a "fresh start" to begin anew. However, the public policy behind the "fresh start" doctrine applies only to the honest debtor. This policy was affirmatively reiterated by the Fifth Circuit when reviewing the history of the Bankruptcy Code's nondischargeable debt provisions. *See Matter of Boyle,* 819 F.2d 583, 587 (5th Cir.1987). In this case, the Fifth Circuit stated that "[t]he general policy of bankruptcy law favors allowing the debtor to discharge debts and to make a fresh start. This policy, however, is subject to exceptions for certain types of debts, including from a debtor's malfeasance." *Id.* at 587. Although the Code is protective of a debtor's ability to receive a discharge, e.g., by requiring strict interpretations of exceptions to discharge, the fresh start doctrine should not be applied to safeguard a debtor who conceals property beyond the limitations period set out in § 727(e)(2) so as to allow him to benefit from his own misdeeds.

To the extent the Defendant concealed the existence of his interest in a condemnation proceeding in California and later received property therefrom which is property of the estate, the statute of limitations period has been tolled to allow the Plaintiff to pursue his causes of action against the Defendant.

## CONCLUSION

The Defendant's Motion to Dismiss is a motion under Bankruptcy Rule 7012(b). As such, the Court must accept as true all the allegations in Plaintiff's Complaint. Plaintiff's cause of action is not barred by the statute of limitations period set forth in § 727(e)(2) as the case had not been finally closed with all assets administered at the time it was originally closed. Further, the limitations period has been tolled during the time the Debtor concealed from the Trustee the existence of the condemnation proceeding and the payments made to him as a partial condemnation award.

A separate order of even date herewith will be entered by the Court.